KENNETH ANDERSON, PLAINTIFF-RESPONDENT, v. CHARLES MODICA, DEFENDANT-APPELLANT.

Argued February 27, 1950—Decided April 24, 1950.

384

*Mr. George F. Losche* argued the cause for the appellant.

*Mr. Warren Dixon, Jr.,* argued the cause for the respondent.

The opinion of the court was delivered by

BURLING, J. This is an appeal by the defendant from a judgment of the Superior Court, Law Division, entered in favor of the plaintiff pursuant to a jury verdict. The appeal, addressed to the Superior Court, Appellate Division, has been certified on our own motion.

The claims for relief are set forth in the complaint which consisted of four counts. The facts upon which the claims are based emanate from a desire of the plaintiff, who had been a truck driver for the Franklin Lakes Dairy, to purchase a milk route operated by the defendant. The milk served by the defendant was formerly purchased by the defendant from the said Franklin Lakes Dairy but for a period of approximately six months immediately prior to the transaction in issue was purchased by the defendant from another dairy known as Ideal Farms. The transaction contemplated the sale to the plaintiff of all of the home delivery milk business served by two trucks operated by the defendant but only one of the trucks was to be included in the sale. A verbal contract was entered into between the parties and the purchase price was $10,000. A check for $5,000 representing one-half of the purchase price was paid by the plaintiff to the defendant on August 25, 1947. The balance of the purchase price was to be paid on September 15, 1947, at which time all books and accounts were to be turned over to the plaintiff by the defendant. During the period intervening between the date of the initial payment and September 15, 1947, the time fixed for

the closing of the transaction and the transfer of title, the plaintiff rode each day on one of the milk trucks, being driven by the defendant's driver, for the purpose of learning the route.

The complaint contained four counts and each count sought as damages the sum of $5,000, being the amount of the initial payment, together with interest thereon. During the presentation of the plaintiff's case the second and third counts of the complaint were stricken on motion of the defendant and by consent of the plaintiff. At the same time the defendant moved that the plaintiff be required to make an election between the first and the fourth counts; this motion was denied and the defendant moved to dismiss the fourth count on the ground that the *probata* did not follow the *allegata*. The motion was denied. At the close of the plaintiff's case a motion was made to dismiss the fourth count on the ground that it sounded in deceit and that the alleged representation contained therein was a promise to do something in the future and did not allege a cause of action as a matter of law. A reservation of the right to object to the legal sufficiency of this count was contained in the defendant's answer. The motion was denied. At the close of the entire case, motions were made by the defendant for a directed verdict. These motions were also denied. The case was submitted to the jury on the first and fourth counts. The jury returned a verdict in favor of the plaintiff for $5,000, with interest thereon from August 25, 1947, and a verdict of no cause for action on a counterclaim filed by the defendant in which damages in the sum of $5,000, being the balance of the purchase price, were sought on the premise that the plaintiff had breached the contract.

The focal point of contention was surrounded by disagreement as to the nature and effect of the alleged inducements which caused the plaintiff to enter into the contract of purchase.

■ Analysis of the complaint is necessary to an understanding of the problems presented by the appeal. Each of

the first and fourth counts alleged a termination of the contract by the plaintiff and demanded from the defendant the sum of $5,000 with interest thereon from August 25, 1947. The first count alleged that the milk route "was represented by defendant to plaintiff to consist of a home delivery milk route with an average daily business of not less than 550 quarts of milk during the winter months, and not less than 900 to 1,000 quarts per day during the summer months;" that "Plaintiff believed and relied on the representation made by defendant to plaintiff, as aforesaid," and that "The representation made by defendant to plaintiff, on which plaintiff relief, as aforesaid * * * was false and untrue and was made by said defendant to plaintiff, knowing that the same was false and untrue and intending that plaintiff should rely thereon, and the plaintiff did rely thereon, as aforesaid." Thus the allegations of the first count contained the five necessary elements to maintain an action for deceit as delineated by the pertinent landmark cases in this state. *Byard v. Holmes,* 34 *N. J. L.* 296 (*Sup. Ct.* 1870); *Plimpton v. Friedberg,* 110 *N. J. L.* 427 (*E. & A.* 1933).

The gravamen of the action in the first count is clearly grounded in tort for deceit. Where a party has paid money on a contract entered into through fraudulent misrepresentation, he may maintain an action for deceit against the person guilty of the fraud and seek as damages the return of the money paid thereunder. *Puder v. Smith,* 104 *N. J. L.* 148 (*E. & A.* 1927).

The defendant does not question the propriety of the action under the first count but grounds his first point of appeal on the premise that the evidence of representation was not definite and specific but rather that it was loose and vague and that it did not support the first count as a matter of law. Specifically, he contends that the complaint, in referring to the defendant's alleged misrepresentation of the quantity of milk served by the route, charged that the defendant represented the route to be "a home delivery milk route with an average daily business of not less than 550 quarts of milk

during the winter months, and not less than 900 to 1,000 quarts per day during the summer months," whereas the evidence offered by the plaintiff, in referring to the representation of quantity by the defendant, was that "He told me that it was 550 quarts through the winter months and 900 to 1,000 through the summer months." The narrow ground upon which this point proceeds is that the plaintiff did not use the words "per day" in his testimony, in referring to the volume of business allegedly represented by the defendant. There is no merit to this point. The entire case was tried on the theory that the volume of business allegedly represented by the defendant referred to *daily* volume. This is evidenced by the testimony of two independent witnesses, employees of the dairies which supplied the defendant with milk from November 5, 1946, through September, 1947, who testified as to the *daily* average in quarts of milk sold to the defendant for home delivery. It is further evidenced by a question propounded of the defendant by his attorney as follows: "Did you at any time tell Mr. Anderson that your route sold 900 to 1,000 quarts *a day* in the summer months?" Moreover, this point was not raised in any manner by the defendant in the trial court.

Rule 3:46 dispenses with the necessity of exceptions being taken to rulings or orders of the court in order to preserve the questions involved for review on appeal but it is essential that a party make known to the trial court the action which he desires the court to take or his objection to the action of the court and the grounds therefor. If the point had been made below an opportunity would have been open for clarification by the plaintiff, if necessary. It is manifestly unfair to the plaintiff and the trial court to raise the point for the first time on appeal, particularly after participation by the defendant in the trial of the case on the theory that the volume of business allegedly represented by the defendant referred to *daily* volume. Furthermore, Rule 1:3–2 in referring to the requisite contents of an appellant's brief provides that "If the questions involved include any not presented to the court be-

low, this fact shall be noted." The defendant's brief did not conform to this rule.

The second point is addressed to the fourth count of the complaint and the alleged harmful error of the actions of the trial court with respect thereto. The fourth count alleged (1) a representation by the defendant that the milk route did a certain volume of business, the language of this particular allegation being identical with the language of a similar allegation contained in the first count; (2) that "Plaintiff believed and relied on the representations made by the defendant to plaintiff, as aforesaid," and (3) that "* * * the representation of the volume of milk sold by the defendant was untrue * * *." This count alleged *additionally* that "It was understood and agreed between plaintiff and defendant, and defendant represented to the plaintiff that on the purchase of said milk route defendant would be able to induce and would induce the persons constituting the customers on said milk route to continue the purchase of milk required by them from plaintiff, as defendant's successor, on said milk route." The defendant contends that this count is founded in deceit and is predicated on an alleged unfulfilled promise to do something *in futuro,* and that the trial court erred in denying the defendant's motion to dismiss this count at the close of the plaintiff's case and his motion for a directed verdict at the close of the entire case. It is further contended that error was committed by the trial court's refusal to charge the defendant's fourth request to charge, to which refusal he made known his objection. The defendant's fourth request to charge was as follows:

"An agreement to do something in the future, relieved of all the elements of specific fraud, is regarded as a mere expression of opinion, or a mere promise or conjecture, upon which the plaintiff has no right to rely, particularly where the means of information or investigation are equally within the range of both parties."

It is the general rule that to be actionable, fraud must relate to a present or pre-existing fact and cannot ordinarily

be predicated on representations which involve things to be done in the future. *Arnold v. Hagerman,* 45 *N. J. Eq.* 186 (*E. & A.* 1888); *Halpern v. Cafarelli,* 98 *N. J. L.* 77 (*Sup. Ct.* 1922); 23 *Am. Jur., Fraud and Deceit, p.* 794, § 35. In *Halpern v. Cafarelli, supra,* it is said, at *page* 79:

"The legal rule regarding deceit and fraud, as a basis for a legal action, upon the promise to perform an act *in futuro,* is settled by unanimity of authority. Thus it is declared, after an analytical review of the cases, that 'while a statement of a matter in the future, if affirmed as a fact, may amount to a fraudulent representation, it must amount to an assertion of a fact, and not an agreement to do something in the future.' 12 *R. C. L.* 252, and cases cited."

██ The fraud must be in the original contract or transaction and not in the nonfulfillment of the contract. *Ebert v. Givas,* 109 *N. J. Eq.* 495 (*E. & A.* 1931). In the instant case, the alleged representation to induce a retention of the customers was a promise to perform an act in the future and is not in a legal sense a representation; and a mere failure to perform does not change its character. Such failure to perform is merely a breach of contract which may give rise to an action on the contract. 23 *Am. Jur., Fraud and Deceit, p.* 801, § 38.

██ In addition, further analysis of the fourth count discloses that while it appears to sound in fraud or deceit it does not contain the necessary elements to support an action of this nature. It alleges representation, falsity of the representation and reliance thereon but does not allege *scienter* and the intent on the part of the defendant that the plaintiff should rely on the representation. The new rules are designed to accomplish substantial justice and have eliminated many of the former technicalities of pleadings, *Rule* 3:8–1, but it is still essential that the gist of an action be alleged in the complaint. *Rule* 3:9–1 provides that "* * * Malice, intent, knowledge and other condition of mind of a person may be averred generally," but they must still be averred.

The flexibility of pleading under the new rules does not abandon the essentials of sound pleading. The objective to

be attained by the new rules is to reach an issue through the media of simplified pleadings but not at the sacrifice of stating the elements of a claim. In *Grobart v. Society for Establishing Useful Mfrs.,* 2 *N. J.* 136 (1949), Chief Justice Vanderbilt, speaking for the court said, at *page* 151:

"The common law has been saved from the excesses of special pleading and especially its verbosity and technicalities, and nowhere more effectively than in New Jersey, but in the process the substantive law has not been changed. On the contrary, it has been preserved and our procedure has been made to serve the ends of substantial justice, not by abandoning stating the essentials of a cause of action or of a defense, but by doing so in 'simple concise and direct terms.' *Rule* 3:8–5(a); see, also, *Rules* 3:8–1, 3:8–2."

While the fourth count is legally sufficient to support a claim for relief in contract under *R. S.* 46:30–75(d), the case was tried and submitted to the jury on the premise that it was an action for deceit. The pretrial order states: "The parties agreed to limit the trial of this action to the following issues: Claim and counterclaim. (a) The issues are limited to the five elements of fraud. (b) Whether the plaintiff is indebted to the defendant, and if so, how much." The fourth count did not contain the "five elements of fraud" as proscribed by the trial order and for this reason should have been dismissed. The effect of the pretrial order was to limit the issues to those therein circumscribed. *Rule* 3:16 as it existed at the time of the trial of this case provided that the pretrial order should control the subsequent cause of action, unless modified at the trial to prevent manifest injustice. See *Jenkins v. Devine Foods, Inc.,* 3 *N. J.* 450 (1950); *Meade v. Wiley M. E. Church,* 4 *N. J.* 200 (1950). There was no modification of the pretrial order and the course of the trial should have been controlled by the issues framed in the original order.

It has been urged that the verdict and consequent judgment should be affirmed on the theory that the first count of the complaint was properly pleaded and proved and is sufficient to sustain the verdict. This argument is based on *R. S.* 2:27–238 (*L.* 1903, *c.* 247) which provides:

"If the complaint contains several counts, some of which are good and some bad, and entire damages are given, the verdict shall be good; but defendant may apply to the court to instruct the jury to disregard the bad counts."

While at common law if the declaration in a civil action contained several counts, one of which was defective, and general damages were given on the whole declaration, the judgment would be reversed, see *Karnuff v. Kelch*, 71 *N. J. L.* 558 (*E. & A.* 1904), it appears that the substance of *R. S.* 2:27–238 has been a part of the statute law of this state since 1797. See *Paterson's Laws, p.* 259, *c.* 21 (An act relative to juries and verdicts); *Revision of* 1846, *c.* 13, § 38; *L.* 1874, § 186, *Rev. Stat.* 1877, *p.* 876, § 186; *Gen. Stat.* 1709-1895, *p.* 2563, § 186, *Comp. Stat.* 1709-1910, *p.* 4103, § 161. Several cases have been decided by our courts under *R. S.* 2:27–238 and its predecessor statutes. In *Hansen v. De Vita*, 76 *N. J. L.* 96 (*Sup. Ct.* 1908), it was decided that where a complaint contained three counts and one of them would support the verdict the judgment was good. In *Delaware, L. & W. R. Co. v. Salmon*, 39 *N. J. L.* 299 (*E. & A.* 1877), it was pointed out that the statute furnished a remedy to the defendant by permitting him to apply to the court to instruct the jury to disregard the bad counts.

In the case *sub judice* the defendant substantially complied with the provisions of the statute in his efforts to have the fourth count disregarded by the jury. During the trial the defendant moved to strike the fourth count on the ground that it alleged a representation of a promise to do something in the future and for this reason was deficient in law; at the close of the entire case he moved for the direction of a verdict on the same ground; and his fourth request to charge was obviously directed against the fourth count of the complaint which alleged that "It was understood and agreed between plaintiff and defendant, and defendant represented to the plaintiff, that on the purchase of said milk route defendant would be able to induce and would induce the persons constituting the customers on said milk route to continue the

purchase of milk required by them from plaintiff, as defendant's successor, on said milk route." This is patently a collateral promise to do something in the future, *i. e.*, after the agreement to purchase.

Since we have determined that the first count contained the necessary elements of deceit to support the action, while the fourth count did not, and since the pretrial order, then existing and in force, limited the trial to the five elements of fraud, and thereby grounded the action in tort, the fourth count should have been dismissed for this reason and the case decided solely under the first count.

The case, however, proceeded erroneously under both counts and was submitted to the jury upon the premise of actions in deceit; in this posture errors were committed (1) in the court's refusal to grant the defendant's motion to strike the fourth count, (2) in the court's refusal to grant the defendant's motion for a directed verdict on the fourth count, and (3) in the court's refusal to charge the defendant's fourth request to charge.

The allegations and proofs submitted under the first count were within the pretrial order and were sufficient to sustain a verdict, but a verdict predicated on the fourth count on the premise of an action in deceit would be clearly erroneous for the reasons indicated. It is impossible to determine on which count the jury predicated its verdict. For this reason prejudicial error occurred and the judgment must·be reversed.

We have considered the other points of appeal advanced by the defendant and find them to be without merit.

The judgment is reversed and the case is remanded to the Superior Court, Law Division, for a trial *de novo*. A trial *de novo* will afford an opportunity to the plaintiff to apply for an amendment of the pretrial order; in that event, since a claim for relief arising from a breach of contract is alleged in the fourth count, alternate claims may be submitted under appropriate instructions.

Vanderbilt, C. J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT and BURLING—5.

*For affirmance*—Justice WACHENFELD—1.