HENRY J. DAALEMAN, INDIVIDUALLY AND AS A REPRE-
SENTATIVE OF A CLASS OF ELIZABETHTOWN GAS
COMPANY CONSUMERS, PLAINTIFF-RESPONDENT AND
CROSS-APPELLANT, v. ELIZABETHTOWN GAS COM-
PANY, DEFENDANT-APPELLANT AND CROSS-RESPON-
DENT, AND THE NEW JERSEY BOARD OF PUBLIC
UTILITY COMMISSIONERS, DEFENDANT-RESPONDENT.

Argued April 24, 1978—Decided June 29, 1978.

*Mr. Russell Fleming, Jr.* argued the cause for appellant.

*Mr. Henry J. Daaleman* argued the cause for cross-appellant.

*Mr. Bertram P. Goltz, Jr.,* Deputy Attorney General, argued the cause for respondent (*Mr. Stephen Skillman,* Assistant Attorney General, of counsel, *Mr. John J. Degnan,* Attorney General of the State of New Jersey, attorney).

The opinion of the court was delivered by

SULLIVAN, J. The present suit, so far as it is pertinent to this appeal, was filed as a class action against defendant Elizabethtown Gas Company (Elizabethtown), a privately owned public utility corporation operating under the jurisdiction of the Board of Public Utility Commissioners of the State of New Jersey (PUC). Plaintiff alleges that he is a member of a class of 186,000 gas customers of Elizabethtown and that he is maintaining this suit on their behalf under the New Jersey Consumer Fraud Act, *N. J. S. A.* 56:8–1 *et seq.*

Plaintiff charges that Elizabethtown has fraudulently manipulated the Purchased Gas Adjustment Clause which is a part of its filed tariff so as to overstate the actual cost of gas purchased, as well as the quantity thereof, and has reflected this overstatement in the monthly bills sent to its

customers. The suit demands treble damages, counsel fees and costs. *N. J. S. A.* 56:8–19.

The trial judge, in an opinion reported at 142 *N. J. Super.* 531 (Law Div. 1976), dismissed plaintiff's suit, holding that the Consumer Fraud Act did not apply to a public utility. The dismissal was without prejudice to plaintiff presenting the same complaint to PUC, which the trial judge held was the appropriate forum for granting redress for overcharges by a public utility.

On appeal by plaintiff, the Appellate Division, in a reported opinion, 150 *N. J. Super.* 78 (1977), agreed that the breadth of the PUC's statutorily accorded regulatory control over public utilities virtually mandated adjudication of the merits of plaintiff's complaint by that agency rather than by the court. The Appellate Division held, though, that public utilities were also subject to the provisions of the Consumer Fraud Act and that the court had concurrent jurisdiction to entertain plaintiff's complaint. However, since the basic issue, namely Elizabethtown's alleged fraudulent manipulation of the Purchased Gas Adjustment Clause, was within the PUC's special competence, expertise and statutory jurisdiction, the Appellate Division held that the doctrine of primary jurisdiction should have been invoked and, instead of dismissing the complaint, the court should have stayed the action pending PUC's resolution of the "agency" issues.[1]

Specifically, the Appellate Division held that the only issue raised by plaintiff's complaint which was not initially adjudicable by the PUC, was plaintiff's right to treble damages and counsel fees. In this regard, the Appellate Division held that the Consumer Fraud Act did not mandate an award of treble damages but only authorized such award in

---

[1] Under the doctrine of primary jurisdiction the court declines original jurisdiction and refers to the appropriate body those issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.

the discretion of the trial court. The matter was accordingly remanded for reinstatement of plaintiff's complaint and, dependent upon the outcome of the PUC hearing, consideration of the question of treble damages and counsel fees. Elizabethtown's petition for certification was granted by this Court. 75 *N. J.* 537 (1977), as was plaintiff's cross-petition. 75 *N. J.* 590 (1977).

As heretofore noted, Elizabethtown is a privately owned public utility corporation operating under the jurisdiction of PUC. It is subject to the provisions of the Public Utilities Act, *N. J. S. A.* 48:2-1 *et seq.* and implementing regulations promulgated by PUC. The rates it charges customers for gas service are fixed by PUC. However, an Administrative Order of PUC, *N. J. A. C.* 14:11-1.13, allows Elizabethtown to include in its tariff a Purchased Gas Adjustment Clause by virtue of which the utility is permitted to make automatic adjustments in its customer billings for variations in the cost of purchasing and storing gas. The administrative order requires Elizabethtown to submit to PUC detailed statements as to such cost figures and adjustments in billings made thereunder. Elizabethtown's alleged overcharging of customers made under this clause is the basis of plaintiff's suit.

The Consumer Fraud Act, originally enacted in 1960, is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate. It provides in *N. J. S. A.* 56:8-2,

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; * * *.

The act as amended and supplemented is administered by the Division of Consumer Affairs, Department of Law and Public Safety. *N. J. S. A.* 52 :17B–124. Detailed administrative regulations have been adopted, pursuant to the act, controlling selling and advertising practices in the areas of consumer sales which are subject to the act. *N. J. A. C.* 13 :45A–1.1 *et seq.*

The act provides for injunctive relief against unlawful practices, *N. J. S. A.* 56 :8–8, monetary penalties for violation of the act, *N. J. S. A.* 56 :8–13, and also permits a person, who suffers a loss due to a method, act or practice declared unlawful under the act, to sue and recover threefold the damages sustained, together with reasonable attorney's fees and costs of suit, *N. J. S. A.* 56 :8–19.

█ It seems clear that Elizabethtown, by using its Purchased Gas Adjustment Clause in its monthly billings, did not engage in a selling or advertising practice within the meaning of the Consumer Fraud Act. In enacting *N. J. S. A.* 56 :8–1 *et seq.*, the legislative concern was over sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.

This is simply not the present case. Here involved are adjustments in defendant utility's billings as a result of variations in the costs of it of purchasing and storage gas supplies. As heretofore noted, a Purchased Gas Adjustment Clause is a tariff mechanism, permitted under PUC's administrative order. Application of the clause involves interpretation of the PUC administrative order and regulations. Its use is subject to PUC supervision and control. Misuse of this type of clause, whether intentional or otherwise, and the remedies therefor are matters as to which PUC has been vested with exclusive jurisdiction.

The record shows that as a result of a complaint by plaintiff to PUC regarding Elizabethtown's alleged fraudulent manipulation of the clause in question, the Division of

Audits of PUC is presently conducting an investigation of the matter. Upon completion of the audit, the PUC will then afford plaintiff the opportunity to "present his factual contentions and legal arguments." If it should develop that Elizabethtown is making improper use of its Purchased Gas Adjustment Clause, PUC has ample authority to order corrective and remedial action.

It is also to be noted that the Consumer Fraud Act is Administered by the Division of Consumer Affairs which has promulgated extensive regulations for those consumer transactions which are subject to the act. Were Elizabethtown held to come under the act in its use of its Purchased Gas Adjustment Clause, a situation would be presented where separate state agencies would have the right to exercise concurrent jurisdiction and control over Elizabethtown's billings, with a real possibility of conflicting determinations, rulings and regulations affecting the identical subject matter.

The Consumer Fraud Act also provides that in a suit under the act by a person who suffers a loss because of a violation of the act, "the court shall * * * award threefold the damages sustained * * *," as well as reasonable attorney's fees and costs. This provision is a punitive measure which is inappropriate where a public utility is concerned. It constitutes an additional reason why Elizabethtown, at least in the activity here involved, is not subject to the provisions of the Consumer Fraud Act.

A privately owned public utility such as Elizabethtown is a complex mechanism. It exists to serve a public need but to do so it must have investor appeal. It must be allowed a reasonable return on its investment. It needs borrowing power at normal business rates to finance its day-to-day operations. The soundness of its financial structure is the key to its successful operation in the public interest. Punitive assessments against it are counterproductive because, in the long run, it is the public users of the utility service on whom the punitive award will fall. No

matter how such award is molded to avoid a "pass through" of the punitive damages, the financial structure of the utility will be affected with resultant loss of investor appeal and higher interest rates for borrowing, all of which will ultimately be reflected in the rates charged consumers.

The Appellate Division recognized that an award of treble damages against a utility might well be counterproductive to the interests of the very class on whose behalf the suit was allegedly brought. It sought to avoid such result by holding that an award of treble damages was not mandated by the Consumer Fraud Act but only authorized by it. We find it unnecessary to approve or disapprove of this holding in view of our disposition of the case.

During the pendency of this appeal, defendant Elizabethtown filed a motion in this Court to disqualify plaintiff Daaleman from acting both as attorney for the class, and as class representative, because of the potential conflict of interest. See *Kramer v. Scientific Control Corp.*, 534 *F.* 2d 1085 (3 Cir. 1976), *cert.* den. 429 *U. S.* 830, 97 *S. Ct.* 90, 50 *L. Ed.* 2d 94 (1976). Alternatively, defendant sought a remand to the trial court for a hearing on the maintainability of the class action under *R.* 4:32–2(a). In view of our disposition of the case, a ruling on these matters is unnecessary.

For the reasons given, we conclude that the subject matter of plaintiff's complaint is within the exclusive jurisdiction of PUC and is not cognizable under the Consumer Fraud Act. The judgment of the Appellate Division is reversed and the judgment of the trial court granting summary judgment in favor of Elizabethtown is hereby reinstated.

PASHMAN, J., concurring. I fully subscribe to the cogent analysis of Justice Sullivan and join his opinion for the Court. I agree that the alleged fraudulent conduct of the defendant utility, which is the gravamen of plaintiff's complaint, does not constitute fraud "in connection with

the sale" of merchandise within the meaning of the applicable provision of the Consumer Fraud Act, *L.* 1967, *c.* 301, *N. J. S. A.* 56:8–1 *et seq.*

I write separately to note that a regulated utility may nevertheless be covered by that Act when it engages in commercial activity not governed by the comprehensive scheme of PUC rate regulation.

A public utility plainly qualifies as a "person" as that term is defined in the Act. *See N. J. S. A.* 56:8–1(d). There is no valid reason why a utility, simply by reason of the fact that it is subject to regulation of its rates in the public interest, should be exempt from the Act if it should commit fraud in connection with the marketing of merchandise. To take a currently obvious example, the telephone company's persistent efforts to convince consumers to purchase "personalized," custom-designed phones are no different from the attempts of any other manufacturer to effectively advertise and sell its products. Suppliers of fuel will often sell related equipment, such as oil burners, fuel tanks or gas and electric ranges in connection with their regulated activity. Conduct of this type should not be exempt from *N. J. S. A.* 56:8–2 merely because of the fortuitous circumstance that the vendor involved is a utility subject to PUC regulation on unrelated matters. If a utility engages in practices of the type proscribed by the Consumer Fraud Act, *N. J. S. A.* 56:8–2, it should be subject to the same penalties as any other vendor.

Our decision today holds only that alleged fraud in the clearly rate-related activity of a regulated utility is not remediable under the Consumer Fraud Act. The application of *N. J. S. A.* 56:8–2 to such activity was not within the legislative contemplation and adequate relief is available from the PUC in the event fraudulent conduct by the utility is proven. Utilities which venture beyond the sphere of PUC regulation and into the consumer marketplace must comply with the proscriptions of the Consumer Fraud Act or face liability thereunder.

As the Court notes, utility customers victimized by a utility's fraudulent rate practices may obtain redress from the PUC. In fashioning an appropriate remedy for such illegal conduct, the PUC is empowered, and indeed obligated, to award complete relief to the entire class of persons who were improperly charged excessive rates. The most suitable remedy in such a case would be a mandatory rate reduction for all customers of the utility for the period of time necessary to ensure that all of its illegal profits will be disgorged. Such "fluid" class relief has been employed in other instances where class-wide injury has been suffered and its use in an administrative forum is equally appropriate. *See Bebchick v. Public Utilities Commission*, 115 *U. S. App. D. C.* 216, 232, 318 *F.* 2d 187, 203–04 (D. C. Cir. 1963), *cert.* den. 373 *U. S.* 913, 83 *S. Ct.* 1304, 10 *L. Ed.* 2d 414 (1963); *Mountain States Tel. Co. v. Public Utilities Commission*, 180 *Colo.* 74, 502 *P.* 2d 945, 949 (Sup. Ct. 1972); *see also Blue Chip Stamps v. Superior Ct.*, 18 *Cal.* 3d 381, 134 *Cal. Rptr.* 393, 556 *P.* 2d 755 (1976) (Tobriner, J., concurring).

Finally, I find that *N. J. S. A.* 56:8–19 not only sanctions but requires the award of treble damages to a successful plaintiff in an action under the Consumer Fraud Act. The statutory language involved, like that used in the analogous provision of the New Jersey Antitrust Act, *L.* 1970, *c.* 73, *N. J. S. A.* 56:9–12, clearly speaks in the imperative. I believe that the deterrent and punitive purposes of the Act would be substantially undermined by any judicial impairment of its primary weapon against those who engage in consumer fraud.

PASHMAN, J., concurring in the result.

*For reversal*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN, CLIFFORD and HANDLER and Judge CONFORD—6.