245 N.J. Super. 302 (1990)
585 A.2d 420
JAMES J. BARRY, JR., DIRECTOR OF NEW JERSEY STATE DIVISION OF CONSUMER AFFAIRS, BY WILLIAM H. ROSS III, DIRECTOR OF ATLANTIC COUNTY DIVISION OF CONSUMER AFFAIRS, PLAINTIFFS,
v.
NEW JERSEY STATE HIGHWAY AUTHORITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, OPERATING THE GARDEN STATE PARKWAY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided April 1, 1990.
*304 Joseph Kane for plaintiff (Assistant County Counsel) On the Brief: Joseph E. Kane and John R. Rauh.
Donald Robinson for defendants (Robinson, Wayne & LaSala) On the Brief: Donald A. Robinson and Russell S. Burnside.
Andrea M. Silkowitz, Assistant Attorney General Amicus Curiae for State of New Jersey (Robert J. Del Tufo, Attorney General of New Jersey).
GIBSON, J.S.C.
This action requires the resolution of the previously unaddressed question of whether the New Jersey Highway Authority is subject to suit under the Consumer Fraud Act. N.J.S.A. 56:8-1 et seq. Under the circumstances presented here and for the reasons expressed below, it is the conclusion of this court that it is not. The issue is presented by way of cross-motions for summary judgment.

FACTUAL BACKGROUND
The Defendant, New Jersey Highway Authority (Authority), owns and operates the Garden State Parkway, one of the two major north-south highways in this state. Effective April 16, 1989 and with the Governor's approval, the Authority increased tolls on the Parkway from twenty-five to thirty-five cents. Coincidental with that increase, the Authority also offered discount tokens for a sixty day period. By permitting forty tokens to be purchased for ten dollars, purchasers were given a savings of approximately forty percent. The discount was advertised in a variety of ways including press releases, signs at the toll booths and signs on the sides of Authority trucks.
Shortly after the toll increase went into effect, plaintiff's agent, the Atlantic County Division of Consumer Affairs (ACDCA), began receiving complaints that the tokens were unavailable. An investigation by ACDCA confirmed that the *305 complaints were legitimate. When confronted, the Authority's explanation was that it had not anticipated the high demand for the tokens and that purchaser's were hoarding them, thereby thwarting recirculation. The Authority began limiting token sales to certain days per week but subsequent investigation revealed that even on those days, tokens were generally unavailable. Plaintiff filed this Complaint on June 8, 1989.
Although the Complaint is in four counts, generally it alleges a single cause of action under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. Stated most simply, plaintiff claims that the Authority advertised that Parkway tokens could be purchased at a discount price for a specific time then fraudulently breached that promise by failing to make the tokens available in sufficient quantities to meet the reasonably anticipated consumer demands. Plaintiff seeks various forms of relief including the reinstatement of the discount sale, the issuance of rain checks whenever tokens are unavailable, the imposition of penalties for each offense and reimbursement for costs. Defendant denies any breach of the Act and seeks to dismiss the Complaint for that reason. It also seeks to dismiss on the ground that the Consumer Fraud Act does not apply to its actions, and, in particular, not to the sale of tokens. The arguments regarding the applicability of the Act will be treated first.

LEGAL CONCLUSIONS
Whether the Consumer Fraud Act applies to Authority actions is not answered with any clarity by either that Act, the New Jersey Highway Authority Act or existing case law. An examination of the Highway Authority Act is nevertheless helpful. The Authority was created in 1952 with the express intention of having it acquire, construct, maintain and operate certain limited access highways in New Jersey. N.J.S.A. 27:12B-1 et seq. Once created, it built the Garden State Parkway and has operated it ever since. N.J.S.A. 27:12B-4 makes it *306 clear the Authority is an instrumentality intended to exercise essentially public and governmental functions. When involved in the operation of an authorized project such as the Parkway, its actions are specifically deemed to be an "essential governmental function of the state." Ibid.
Included among the powers granted to the Authority is the power to sue and be sued in its own name, to hold property, exercise the power of eminent domain, enter into contracts, float bonds, collect tolls and establish and enforce rules and regulations governing its highway projects. N.J.S.A. 27:12B-5; Monarch Entertainment Bureau v. New Jersey Highway Authority, 715 F. Supp. 1290, 1291 (D.N.J. 1989), aff'd, 893 F.2d 1331. Its members are appointed by the Governor with the advice and consent of the Senate and they may be removed by the Governor only for cause. The Governor also receives copies of the minutes of every Authority meeting and through his veto, has approval power over all Authority action. Ibid.; See N.J.S.A. 27:12B-4 (as amended).
It is against the above legislative backdrop that the Consumer Fraud Act should be examined. N.J.S.A. 56:8-2 defines the activities which that Act covers as follows:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation or the knowing, concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any merchandise or real estate or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, deceived or damaged thereby, is declared to be an unlawful practice....
No reported case addresses the question of whether these prohibitions apply to a state agency such as the Highway Authority but an analogous issue was confronted in Daaleman v. Elizabethtown Gas Company, 77 N.J. 267, 390 A.2d 566 (1978). In Daaleman, a group of consumers claimed that a privately owned public utility had violated the Consumer Fraud Act by overstating the costs and quantity of its fuel purchases. The Court disagreed and decided that public utilities were not *307 subject to the Act. In so ruling, the Court reasoned that the legislature would not have intended the Act to apply to an entity the activities of which were already supervised and regulated by an agency of the State, in that case, the Public Utilities Commission. See also Pierzga v. Ohio Cas. Group of Ins. Companies, 208 N.J. Super. 40, 504 A.2d 1200 (App.Div. 1986) where it was held that the Act did not apply to insurance claim payment practices because the Department of Insurance had exclusive regulatory jurisdiction.
Admittedly, the Highway Authority is not regulated in the same way as public utilities and insurance companies. For example, there is no administrative forum for airing claims which relate to the manner in which a particular Authority decision is implemented. Nevertheless, all Authority actions are subject to review by the Governor's office. When it comes to fixing, revising, or adjusting tolls, there must be prior written approval by both the Governor and either the State Treasurer or the Director of the Division of the Budget. N.J.S.A. 27:12B-4; N.J.S.A. 27:12B-14; Fidelity Union Trust Co. v. N.J. Highway Auth., 85 N.J. 277, 282, 426 A.2d 488 (1981). For present purposes, therefore, it is fair to conclude that the parallels between a public utility and the Highway Authority are considerably more alike than they are different. If that were not the case and one were to assume that the legislature intended the Highway Authority to be subject to suits under the Consumer Fraud Act, an anomalous scenario would be presented of having two separate state agencies litigating with one another. Not only is such a phenomenon unlikely to have been intended, in this case, there is a specific provision in the Highway Authority Act which prohibits other state agencies from supervising or regulating tolls. N.J.S.A. 27:12B-5.
Another parallel relates to the appropriateness of applying the punitive aspects of the Act to the Authority. As noted in Daaleman, violations of the Act trigger penalties and/or treble damages. Such punitive measures were specifically held *308 not to be proper where a public utility is concerned. Daaleman v. Elizabethtown Gas Company, supra at 272, 390 A.2d 566. The same can be said with equal force regarding the Highway Authority. A punitive award here would simply transfer funds from one public coffer to another. It is significant in that regard that the Contractual Liability Act, which generally waives the defense of sovereign immunity for contract claims against the State, specifically precludes the recovery of punitive damages. N.J.S.A. 59:13-3.
Finally, it is difficult to see how the Authority's sale of tokens or its promotion of a discount can be fairly viewed as the type of sale or "merchandise" contemplated by the Consumer Fraud Act. The Act defines "merchandise" as including "... any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale...." N.J.S.A. 56:8-1(c). Like other provisions in the Act, it is to be defined liberally. See Hundred East Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 515 A.2d 246 (App.Div. 1986), cert. den., 107 N.J. 60, 526 A.2d 146; Morgan v. Air Brook Limousine, Inc., 211 N.J. Super. 84, 95, 510 A.2d 1197 (Law Div. 1986). On the other hand, Parkway tokens are by nature sui generis. They have but one use, there is a single seller and their sale is not for profit. In effect, tokens are simply a prepayment for the right to enjoy a particularized governmental service, in this case, travel on a limited access state highway. My judgment therefore is that tokens do not constitute "merchandise" under this Act.
Even if the Act did apply, it is my conclusion that the actions challenged here would not constitute a violation. As noted, the present challenge relates to the manner in which the Authority offered tokens for sale. Plaintiff claims that the Authority misled the public by promoting a token discount program and inducing the public to use the highway, then failing to fulfill its promise. No particular language of the Consumer Fraud Act has been focused upon in advancing those claims, but presumably *309 plaintiff would argue that the Authority's actions constitute either fraud, a false promise or a misrepresentation. N.J.S.A. 56:8-2.
If plaintiff's argument is accepted and the Act is read literally, N.J.S.A. 56:8-2 can be said to proscribe any false promise in connection with the sale or advertisement of merchandise or real estate. If that is what is intended, then every breach of a contract for the sale of such items would arguably represent a violation. For example, all contracts include a promise of performance, either express or implied. 17 Am. Jur.2d, Contracts, § 2 at 334 (1964). A breach of that promise arguably makes the promise "false". Given such an approach, that same breach makes the unfulfilled promise either a misrepresentation, fraudulent or both.
On the other hand, despite the liberality with which the Act is to be read, Levin v. Lewis, 179 N.J. Super. 193, 200, 431 A.2d 157 (App.Div. 1981), no one has yet suggested that the legislature intended to make every breach of contract a violation. Indeed, it has been recognized by our judiciary that, despite its broad language, reasonable limits must be placed upon the operation of the Act in order that its enforcement will properly reflect legislative intent, however ascertained. DiBernardo v. Mosley, 206 N.J. Super. 371, 375, 502 A.2d 1166 (App.Div. 1986). If the intent is to protect consumers from fraud and fraudulent practices in the sale of goods and services, as has been stated, then certainly something more than a mere breach of contract is required. Kugler v. Romain, 58 N.J. 522, 279 A.2d 640 (1971); D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 25, 501 A.2d 990 (App.Div. 1985).
Although plaintiff claims that the Authority's failure to make good on its discount offer constitutes fraud, in this setting, such a failure represents no more than a breach of *310 contract. For example, plaintiff does not claim that the Authority never intended to fulfill its promise.[1]
It is the general rule that fraud cannot be predicated upon statements which are promissory in their nature at the time they are made and which relate to future actions or conduct. Thus fraud cannot be predicated upon the mere non-performance of a promise.... [37 Am.Jur.2d, Fraud & Deceit, § 60 (1968).]
Fraud must be in the original contract, not its non-fulfillment. Anderson v. Modica, 4 N.J. 383, 73 A.2d 49 (1950). A failure to fulfill a promise may constitute a breach of contract, but it is not fraud and the non-performance of that promise does not make it so. Id. at 392, 73 A.2d 49. Such conduct is a misrepresentation only if the promisor knew when he made it that the promise could not or would not be fulfilled. Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 380-381, 164 A.2d 607 (App.Div. 1960). Foont-Freedenfeld v. Electro-Protective Corp., 126 N.J. Super. 254, 257, 314 A.2d 69 (App.Div. 1973), aff'd, o.b. 64 N.J. 197, 314 A.2d 68 (1974).
Another problem with plaintiff's claim arises from its effort to classify the Authority as a "person" under the Act. N.J.S.A. 56:8-1(d) defines that term broadly and includes "... any natural person or his legal representative, partnership, corporation, company, trust, business entity or association...." Since the Highway Authority is described as a "body corporate and politic with corporate succession," N.J.S.A. 27:12B-4, plaintiff argues that it is the type of "corporation" encompassed by the Act, particularly since the Authority can either sue or be sued in its own name. N.J.S.A. 27:12B-5(d). Finally, plaintiff argues that if the legislature intended to exclude the Authority, it could have done so directly. Defendant responds by arguing that the opposite is true and points out that whenever the *311 legislature has intended to permit its own agencies to be included within the ambit of remedial legislative acts, it has expressly so provided.
Although the case law in this area is neither extensive nor well settled, what guidance there is supports defendant's position. In Garden State Pkwy. Emp. v. N.J. Highway Auth., 105 N.J. Super. 168, 251 A.2d 463 (App.Div. 1969), for example, the Appellate Division addressed the question of whether the Highway Authority was bound by legislation which compels any board, body, agency or commission of the State to deduct union dues from employee's wages when requested to do so. Despite the fact the language of that legislation is all encompassing on its face, the court concluded that the Authority was not covered and reasoned that "whenever the Legislature intended to include authorities within the ambit of certain legislation, it expressly so provided." (citing examples) Id. at 171, 251 A.2d 463. See also Transcontinental Gas Pipe Line Corp. v. Dept. of Conserv., etc., 43 N.J. 135, 143, 202 A.2d 849 (1964). Although not universally helpful because of the particular statutes under review, the out-of-state cases which have addressed this question have generally reached the same conclusion. See, e.g. United States Leasing Corp. v. City of Chicopee, 402 Mass 228, 521 N.E.2d 741 (1988); Board of Regents of the University of Wisconsin System v. Mussallem, 94 Wis.2d 657, 289 N.W.2d 801 (1980); Williamson v. Grant County Public Hospital Dist. No. 1, 65 Wash.2d 245, 396 P.2d 879 (1964).

CONCLUSION
For all of these reasons, it is the conclusion of this court that with respect to the activities challenged here, the Highway Authority is not only not subject to suit under the Consumer Fraud Act, but even if it were, its failure to fully perform its discount token sale would not be a violation. Many of the reasons which support the view that the Act was not violated *312 also support the conclusion that the Act does not apply at all. Having so concluded, however, it is not the intention of the court to suggest that the Authority is not accountable for its actions. It may be that the activities complained of constitute a breach of contract. If so, the Authority is responsible under common law contract theories. However, no such cause has been placed before this court and defendant's motion for summary judgment should be granted. Plaintiff's motion is denied.
NOTES
[1] Although this matter is before the court on cross-motions for summary judgment, plaintiff has not presented any certification which advances a particular factual position. Nor has it opposed the affidavit submitted on behalf of the Authority. The facts assumed to be true for these purposes are therefore a reflection of the arguments plaintiff advances and the facts admitted by the parties.