**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1981-17T3

MARY FOURTE,

      Plaintiff-Appellant,

v.

CHRYSLER CAPITAL,
a foreign Limited
Liability Company,

      Defendant-Respondent.

_____

        Submitted December 6, 2018 – Decided March 1, 2019

        Before Judges Simonelli and O'Connor.

        On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. DC-004207-17.

        Michael W. C. Fourte, attorney for appellant.

        LeClairRyan, PC, attorneys for respondent (Robert J. Brener, of counsel and on the brief).

PER CURIAM

Plaintiff Mary Fourte appeals from the November 17, 2017 Law Division order granting summary judgment to defendant Chrysler Capital (Chrysler) and dismissing with prejudice plaintiff's claims under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681a to 1681x, and her claim of unjust enrichment.[1]  We affirm.

I.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff, who opposed entry of summary judgment. Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

On October 30, 2013, plaintiff entered into a thirty-nine-month closed-end motor vehicle lease with DeCozen Chrysler Jeep Dodge (DeCozen) for a 2014 Chrysler minivan.  DeCozen immediately assigned the lease to CCAP Auto Lease Ltd., and Chrysler began servicing the lease on October 30, 2013.

The lease required plaintiff to make thirty-nine monthly payments of $299.81.  After she made the initial payment of $299.81 on October 30, 2013,

---

[1]  The order also dismissed plaintiff's claim under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a to 1692p.  Plaintiff does not appeal from the dismissal of that claim.  In addition, plaintiff voluntarily dismissed her claims under the New Jersey Fair Credit Reporting Act, N.J.S.A. 56:11-28 to -43, and the New Jersey Fair Debt Collection Practices Act, N.J.S.A. 45:18-1 to -6.1.

A-1981-17T3

each of her monthly payments thereafter were due on the twenty-ninth day of the month beginning in November 2013. The lease required plaintiff to pay a late charge of the lesser of twenty dollars or five percent of the unpaid amount if she did not pay all or any portion of a monthly payment within ten days of its due date. Plaintiff incurred a late charge thirty-five times over the course of the lease.

The lease required plaintiff to pay a $495 vehicle return fee if the lease was terminated before the lease term and the vehicle was returned. The vehicle return fee would not apply if the lease ended early by plaintiff's purchase of the vehicle. The lease required plaintiff to pay a $395 disposition fee if she returned the vehicle at the end of the lease term. The disposition fee would not apply if the lease ended early or if plaintiff purchased the vehicle at the end of the lease term. Upon return of the vehicle, the lease required plaintiff to pay a charge for any excessive wear and tear on the vehicle.

On July 9, 2016, Chrysler sent plaintiff a billing statement for an outstanding payment of $299.81 for June 2016, plus $39.73 in late fees, for a total of $339.54, to be paid by July 29, 2016. The billing statement also indicated there were six months remaining on the lease. On July 25, 2016, plaintiff made a $300 payment, leaving five payments due under the lease. Her

next payment, the thirty-fifth, was due on August 29, 2016. She did not make the payment and incurred a late charge.

Plaintiff returned the vehicle to DeCozen in September 2016, before the end of the lease term, and did not purchase it. Accordingly, the lease required plaintiff to pay the $495 vehicle return fee.

Plaintiff and DeCozen agreed to a new lease transaction whereby DeCozen would make the remaining five lease payments due under the current lease for August 2016 to December 2016. Plaintiff claimed that "[t]he paperwork [for the new lease transaction] expressly stated that [i]f [she] leased a new Chrysler car [she] would not be charged a disposition fee." However, the paperwork actually stated otherwise: "<u>Any [additional] fees such as [disposition] fee</u>/wear & tear/over mileage/penalties <u>are customer[']s responsibility</u>. [DeCozen is] not paying anything except for [five remaining] payments." (Emphasis added). Additional paperwork also stated: "<u>Lessee is responsible for a disposition fee</u>. This fee can be waived for customers that lease a new . . . vehicle with Chrysler. . . ." (Emphasis added). There is no evidence that Chrysler waived the disposition fee or the vehicle return fee.

According to plaintiff, Chrysler called her on September 19, 2016, and advised it had not received her August 2016 payment, and she may be reported

to the credit bureaus if she did not immediately make the payment. Plaintiff replied that DeCozen should have sent her remaining five payments to Chrysler. Plaintiff called Chrysler on September 23, 2016 and was advised she still owed payment. Thus, on September 23, 2016, plaintiff made a $300 payment.

On September 22, 2016, DeCozen paid $1,449.05, which Chrysler applied to the five payments due for August 2016 to December 2016. This did not end plaintiff's responsibility under the first lease because she still owed the vehicle return fee and excessive wear and tear and late charges. Chrysler applied the $300 payment plaintiff made on September 23, 2016 incorrectly to the $395 disposition instead of the $495 vehicle return fee plaintiff owed under the lease. On September 29, 2016, and again on October 11, 2016, Chrysler sent plaintiff an end of term final bill for $95 for the balance of the disposition fee, $506.50 for excessive wear and tear, and $53.55 for late charges, for a total of $655.05. Plaintiff did not dispute the disposition fee and paid the bill in full on January 10, 2017.

Plaintiff later discovered that an Experian credit report dated February 7, 2017, showed she was thirty-days past due on her Chrysler account in September 2016, and sixty-days past due in October 2016. Plaintiff filed a dispute with Experian.

A-1981-17T3

On February 8, 2017, Chrysler received a notice of dispute from Experian Information Solutions, Inc., which listed a "late mark" on plaintiff's Chrysler account only for September 2016. The notice of dispute was electronically transmitted to Chrysler through the Online Solution for Complete and Accurate Reporting (e-OSCAR), which is a browser-based, Metro 2 complaint system that Equifax and three other credit-reporting agencies, Experian, Innovis, and TransUnion, developed to create and respond to consumer disputes. The credit-reporting agency uploads the dispute to e-OSCAR when the agency receives a request from the customer. The request is then transmitted electronically via e-OSCAR to the furnishers of the information identified in the request, which was Experian here.

Chrysler also received a letter from plaintiff's attorney accusing Chrysler of erroneously reporting that plaintiff was thirty days past due on her Chrysler account in September 2016, and sixty days past due in October 2016, and threatening a lawsuit. Chrysler denied it had done so.

Chrysler conducted an investigation upon receiving the notice of dispute. On February 22, 2017, Chrysler submitted an Automated Credit Dispute Verification (ACDV) to Experian reporting that plaintiff's Chrysler account was current and paid in full and the date of plaintiff's last payment was September

6

2016.  Chrysler requested that the "late marks" for September 2016 and October 2016 be removed and plaintiff's account be updated to reflect the account as being "Paid/Closed current, no late marks reported."  Chrysler transmitted the form to Experian through the e-OSCAR system.  Because Chrysler requested that Experian update the information Experian had reported, Chrysler's response was automatically carbon copied to all other credit reporting agencies, including Equifax and TransUnion.  Chrysler also notified plaintiff's attorney of its response to the notice of dispute.

On March 15, 2017, plaintiff filed a complaint, alleging that Chrysler violated the CFA by receiving forty lease payments (thirty-four from her, five from DeCozen, and the $300 payment she made on September 23, 2016) when it knew it was only entitled to thirty-nine payments, and knowingly and maliciously failed to disclose this to her.  Plaintiff also alleged that Chrysler was unjustly enriched by the fortieth lease payment.

Plaintiff further alleged that Chrysler violated 15 U.S.C. § 1681s-2(a)(7) of the FCRA by willfully and falsely reporting that she was thirty and sixty or more days delinquent on her monthly payments under the lease and not notifying her of the alleged delinquency with thirty days of making the report.

A-1981-17T3

Chrysler filed a motion for summary judgment and plaintiff filed a cross-motion for partial summary judgment on her FCRA claim. Plaintiff did not file a motion to amend her complaint or seek leave to file such a motion. In opposition to Chrysler's motion, plaintiff argued for the first time that Chrysler violated the CFA by unlawfully charging her a disposition fee.

The motion judge granted summary judgment to Chrysler.[2] The judge found that Chrysler's receipt of a fortieth payment, if true, did not rise to the level of consumer fraud within the meaning of N.J.S.A. 56:8-2. The judge further found that plaintiff failed to offer any facts demonstrating a violation of the CFA in connection with the sale or advertisement of any merchandise, and the alleged fortieth payment did not relate to a sale of merchandise.

The judge also found that plaintiff had no private right of action under 15 U.S.C. § 1681s-2(a)(7), Chrysler was not collecting its own debts, and Chrysler did not use plaintiff's name falsely to indicate a third person as collecting a debt. Rather, Chrysler was collecting the lease payments. The judge concluded that

---

[2] Contrary to plaintiff's argument on appeal, the judge considered her cross-motion and found it was moot in light of summary judgment granted to Chrysler. The judge also correctly rejected plaintiff's request to strike Chrysler's opposition to her cross-motion, which Chrysler filed timely under R. 1:6-3(b).

even viewing the facts in the light most favorable to plaintiff, there was no evidence that Chrysler violated the FCRA.

Lastly, the judge found Chrysler was not unjustly enriched by the disposition fee because it corrected the error to apply the $300 to the end of the lease balance rather than seek the payment back only to collect it again.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we review the record and consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 536 (1995)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. National Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v.

Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion[.]" Puder v. Buechel, 183 N.J. 428, 440-41 (2005).

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Applying the above standards, we discern no reason to reverse.

II.

Plaintiff argues that Chrysler violated the CFA by fraudulently misrepresenting she owed an extra $300 lease payment, fraudulently charging her a $395 disposition fee to which it was not legally entitled, and threatening that her credit would be negatively impacted if she did not make the $300 payment. Plaintiff also argues that she suffered an ascertainable loss by paying $395, having a tainted credit report, and spending fees on credit monitoring. We disagree with these arguments.

The CFA "was enacted 'to combat "sharp practices and dealings" that victimized consumers by luring them into purchases through fraudulent or deceptive means.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 121 (2014) (emphasis added) (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 16 (1994)). "To that end, N.J.S.A. 56:8-19 prescribes a cause of action on behalf of '[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act.'" Ibid. (alteration in original) (quoting N.J.S.A. 56:8-19).

N.J.S.A. 56:8-2 identifies the type of conduct that constitutes an "unlawful practice" under the CFA:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
>
> [(Emphasis added).]

A-1981-17T3

"An unlawful practice under the CFA requires 'fraudulent, deceptive or other similar kind of selling or advertising practices.'" Manahawkin Convalescent, 217 N.J. at 122 (quoting Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271, (1978)).

"An 'unlawful practice' contravening the CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation." Dugan v. TGI Fridays, Inc., 231 N.J. 24, 51 (2017). Affirmative acts are "unlawful practices that include unconscionable commercial practices, fraud, deception, false promise, false pretense, and misrepresentation." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 245 (2005).

"In order to establish an affirmative misrepresentation violative of the [CFA], plaintiffs [are] not required to show [the defendant's] knowledge of the falsity of [the defendant's] statement or an intent to deceive." Ji v. Palmer, 333 N.J. Super. 451, 462 (App. Div. 2000). "An affirmative misrepresentation in the context of the [CFA] is 'one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase.'" Ibid. (quoting Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 535 (App. Div. 1996)). However, a showing of intent is essential if the claimed CFA violation is an omission. Dugan, 231 N.J. at 51. A CFA violation

based on an omission occurs only if it "was made knowingly with the intent to deceive the purchasers." Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 602 (App. Div. 1990).

"To prevail under the CFA, a plaintiff must not only prove 'unlawful conduct by defendant,' but must also demonstrate 'an ascertainable loss by plaintiff' and 'a causal relationship between the unlawful conduct and the ascertainable loss.'" Dugan, 231 N.J. at 52 (quoting D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013)). A plaintiff must prove an ascertainable loss that is "quantifiable or measurable," not "hypothetical or illusory." Thiedemann, 183 N.J. at 248. "The limiting nature of the requirement allows a private cause of action only to those who can demonstrate a loss attributable to conduct made unlawful by the CFA." Dugan, 231 N.J. at 53 (quoting Thiedemann, 183 N.J. at 246).

Chrysler was entitled to summary judgment dismissing plaintiff's CFA as a matter of law. Chrysler allegedly made the fraudulent misrepresentations about the $300 payment in September 2016, three years after plaintiff entered into the lease. Thus, the alleged misrepresentations were not made in connection with the sale of the lease, and were not material to the transaction or made to induce plaintiff to enter into the lease. N.J.S.A. 56:8-2; Manahawkin

13                                                                    A-1981-17T3

Convalescent, 217 N.J. at 12; Ji v. Palmer, 333 N.J. Super. at 462. Further, plaintiff failed to establish that Chrysler made the alleged misrepresentations knowingly with the intent to deceive her into executing the lease. Chattin, 243 N.J. Super. at 602. While this alone warranted dismissal of plaintiff's CFA claim, there are more reasons supporting dismissal.

Chrysler did not make any fraudulent misrepresentations to plaintiff about the $300 payment, as all of its representations were true and accurate. On September 19, 2016, when Chrysler allegedly fraudulently misrepresented that plaintiff owed $300, she still owed the thirty-fifth August 2016 payment, as DeCozen had not made the remaining five payments until September 22, 2018.

In addition, under the new lease transaction with DeCozen, plaintiff remained responsible for excessive wear and tear and late charges and any additional fees, such as the disposition fee, which Chrysler did not waive. On September 23, 2016, when Chrysler allegedly made the second fraudulent misrepresentation, plaintiff was subject to the $495 vehicle return fee, and she owed $506.50 for excessive wear and tear and $53.33 for late charges when she spoke to Chrysler on September 23, 2016. Thus, Chrysler made no fraudulent misrepresentations to plaintiff about the $300 payment.

A-1981-17T3

Plaintiff's argument about the $395 disposition fee is unavailing. The clear terms of the lease required plaintiff to pay the $495 vehicle return fee because she returned the vehicle before the end of the lease term and did not purchase it. The only deviation from the lease provision was that Chrysler charged her $395, instead of $495, and incorrectly identified the charge as a disposition fee on the end of term final billing statement instead of a vehicle return fee. Accordingly, plaintiff paid $100 less that what she owed under the lease.

Without any evidence of unlawful conduct, plaintiff cannot establish an ascertainable loss or a causal relationship. We conclude, therefore, that summary judgment was properly granted to Chrysler.

III.

Plaintiff alleged in her complaint that Chrysler violated 15 U.S.C. § 1681s-2(a)(7) by willfully and falsely reporting she was delinquent on her monthly payments and not notifying her of the alleged delinquency within thirty days of making the report. The motion judge correctly found that plaintiff had no private right of action under 15 U.S.C. § 1681s-2(a). See 15 U.S.C. § 1681s-2(c)(1) (a private right of action does not apply to a violation of 15 U.S.C. § 1681s-2(a)); see also SimmsParris v. Countrywide Fin. Corp., 652 F. 3d 355,

358 (3d Cir. 2011) (affirming summary judgment in the defendant's favor and holding there is no private cause of action under 15 U.S.C. § 1681s-2(a)).

Plaintiff now contends for the first time on appeal that she mistakenly cited 15 U.S.C. § 1681s-2(a) in her complaint; the judge knew she meant to cite 15 U.S.C. § 1681s-2(b), which permits a private right of action; and the judge should have sua sponte amended the complaint or granted her leave to amend. We generally decline to address contentions, such as these, that were not raised before the trial court, are not jurisdictional in nature, and do not substantially implicate the public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014). However, we address them for the sake of completeness.

Plaintiff argues that Chrysler violated 15 U.S.C. § 1681s-2(b) when it reported inaccurate information to the credit-reporting agencies regarding her payment history and only notified Experian, and not the other credit-reporting agencies, of the inaccuracy within the thirty-day period prescribed under 15 U.S.C. § 1681s-2(b)(1)(D). This argument lacks merit.

15 U.S.C. § 1681s-2(b) provides as follows:

> (1) In general
>
> After receiving notice pursuant to [15 U.S.C. §] 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided

by a person to a consumer reporting agency, the person shall--

  (A) conduct an investigation with respect to the disputed information;

  (B) review all relevant information provided by the consumer reporting agency pursuant to [15 U.S.C. §] section 1681i(a)(2) . . . ;

  (C) report the results of the investigation to the consumer reporting agency;

  (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

  (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

    (i) modify that item of information;

    (ii) delete that item of information; or

    (iii) permanently block the reporting of that item of information.

(2) Deadline

A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer

17

reporting agency, before the expiration of the period under [15 U.S.C. §] 1681i(a)(1) . . . within which the consumer reporting agency is required to complete actions required by that section regarding that information.

15 U.S.C. § 1861i(a)(1)(A) provides as follows:

(A) In general.--Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

The record confirms that Chrysler fully complied with the requirements of 15 U.S.C. 1681s-2(b)(1) and U.S.C. § 1681i(a)(1)(A). Within thirty days of receiving the notice of dispute, Chrysler conducted an investigation, reported the results of the investigation to Experian and all other consumer reporting agencies with which Chrysler had a reporting relationship, and requested that the "late marks" for September 2016 and October 2016 be removed and plaintiff's account be updated to reflect the account as being "Paid/Closed current, no late marks reported." Thus, plaintiff's newly raised FCRA claim

18

under 15 U.S.C. § 1681s-2(b) fails as a matter of law and the assertion of this claim in an amended complaint would not have survived a motion to dismiss. <u>Interchange State Bank v. Rinaldi</u>, 303 N.J. Super. 239, 256-57 (App. Div. 1997).

## IV.

Lastly, plaintiff contends the judge erred by dismissing her unjust enrichment claim and failing to view the facts in the light most favorable to her. We have considered these contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1981-17T3