**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2736-19

ALISA JENNINGS and
JOHN E. GEORGAS,

      Plaintiffs-Appellants,

v.

EDWARD GNOINSKI,

      Defendant-Respondent.

_____

Argued March 10, 2021 – Decided November 5, 2021

Before Judges Ostrer, Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5718-19.

Mark Welsh argued the cause for appellants (Northeast New Jersey Legal Services, attorneys; Meghan K. Gulczynski and Mark Welsh, on the briefs).

Charles E. Tempio argued the cause for respondent.

The opinion of the court was delivered by

OSTRER, P.J.A.D.

Under the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, an owner of a building with up to three residential units may evict a tenant so the owner can personally occupy the tenant's unit. N.J.S.A. 2A:18-61.1(l)(3). But the owner may not remove a tenant on a pretext. If the tenant vacates after the owner says he is going to occupy and the owner then arbitrarily fails to do so, the tenant can recover treble damages and attorney's fees. N.J.S.A. 2A:18-61.6(a).

In this case, a landlord sought his tenants' eviction for two reasons: because they failed to pay rent, and because they failed to vacate after he notified them he intended to occupy their unit. The parties settled the action with a "pay-and-go" consent judgment. The judgment let the tenants stay for another three months. In return, they agreed to pay $2,000 of the $4,000 rent they owed. Two years later, contending the landlord failed to occupy the unit as required, the tenants sued for treble damages and fees under the Anti-Eviction Act. They also filed a claim under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20. The trial court later granted the landlord summary judgment and dismissed the suit.

On the tenants' appeal, we must decide if the Anti-Eviction Act obliged the landlord to occupy the unit after the parties resolved their case. We hold it did not, because the consent judgment extended the tenancy in return for additional rent and superseded the landlord's claim for possession based on his

2

intent to occupy. We also hold that the landlord's notice of intent to occupy was not actionable under the Consumer Fraud Act, because the landlord effectively withdrew the notice by agreeing to extend the tenants' occupancy.

I.

We discern the following facts from the record, viewed in a light most favorable to plaintiffs as the non-moving parties. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Defendant Edward Gnoinski leased a second-floor apartment to plaintiffs Alisa Jennings and John E. Georgas. The parties agreed the lease's term ran from September 1, 2016 to September 1, 2017, although the lease's stated term ended August 1, 2017 and began August 1, 2016, when the parties executed the lease.[1] The rent was $1,000 a month.

On March 24, 2017, Gnoinski's lawyer informed the tenants, in a letter entitled "NOTICE OF NON RENEWAL," that "the Landlord does not agree to renew the lease and that he intends to personally occupy the premises." Stating (erroneously) that the lease would expire on August 1, 2017, the lawyer

---

[1] Although neither party explains the discrepancy in their statement of material facts, we assume the lease's term shifted a month because the tenants' occupancy was delayed. A handwritten annotation on the printed lease in the record states, "Sept 1 to Sept 1 We Did Not Get In Until August 31st. No Key Till Sept 1st."

"demanded" that the tenants "vacate the premises and return possession of the premises to Landlord on or before the end of the day, August 1, 2017."

In June 2017, apparently after a meeting in court (the reasons for the appearance are not explained), Gnoinski's lawyer sent the tenants another letter. That one stated, "You mentioned in Court that you were not planning on moving by August 1, 2017. You were advised pursuant to New Jersey Statute that Mr. Gnoinski was planning on personally occupying the apartment on August 1, 2017." The lawyer informed the tenants that "[p]ursuant to N.J.S.A. 2A:42-6," if they "continue[d] to occupy this apartment," they would "be charged twice the market rental value" of the unit.

At some point between August and October — the date is not entirely clear — Gnoinski filed a verified complaint for possession based on non-payment of rent. The complaint is dated August 9, 2017.[2] It alleges that the

---

[2] Gnoinski's statement of material facts states, and the tenants admit, that Gnoinski filed a complaint for eviction "[o]n or before October 16, 2017." But litigation evidently started well before mid-October. Georgas certified that he "appeared in court for a Marini hearing on September 21, 2017." Under Marini v. Ireland, 56 N.J. 130 (1970), "the breach of an implied warranty of habitability or covenant to repair could be used by a tenant in defense of an eviction action where defects have been asserted as a defense to nonpayment of rent or as a basis for withholding of rental payments." Szeles v. Vena, 321 N.J. Super. 601, 607 (App. Div. 1999).

A-2736-19

tenants failed to pay rent in July and August.[3]  The complaint states that Gnoinski also sought possession for the additional reason that "[t]enants have been given a 60 day notice in Court and by Certified Mail . . . that Landlord would like to occupy the property for himself starting August 1, 2017."

Gnoinski's lawyer sent a third notice to quit, dated August 31, 2017.  The lawyer stated that the tenants currently had a month-to-month tenancy and "the Landlord does not agree to renew your lease and that he intends to personally occupy the premises."  The lawyer demanded that the tenants vacate by 11:59 p.m. on October 31, 2017, and stated that if they failed to do so, an eviction action would be filed.  But, as we have noted, an eviction action was filed before October 31.

According to Georgas, the parties appeared in court in September.  Georgas admits that he and Jennings failed to pay rent — he does not specify for how long — but he alleges they withheld rent "[d]ue to the conditions in

---

[3]  Gnoinski's statement of material facts states that the tenants "breached the lease due to non-payment of rent in October 2017."  Although the tenants denied the allegation, Gnoinski's statement may imply that the tenants ultimately paid rent for the previous months.  It simply is unclear from the record.

[their] home." He alleges that in September 2017, the court ordered Gnoinski to make repairs and ordered the release of the withheld rent.[4]

But the parties' dispute continued, and trial on Gnoinski's summary dispossess complaint was scheduled for October 31. On the day of trial, the parties — all represented by counsel — reached a settlement. They entered a consent judgment granting Gnoinski a judgment for possession, but permitting the tenants to remain until January 31, 2018, provided they pay $1,000 that day and another $1,000 by November 10, 2017. The consent judgment authorized a warrant of removal that, the landlord agreed, could not be executed until January 31, 2018, unless the tenants failed to make the agreed payments.

The consent judgment said nothing about Gnoinski's previously-announced intention to occupy the unit after October 31, 2017. Gnoinski later certified that he abandoned his cause of action for eviction that was based on the intention to occupy because his complaint was filed prematurely in the case of the August 31, 2017 notice.[5] In his statement of material facts, he alleged he

---

[4] The transcripts of the court appearances in June and September are not before us.

[5] Gnoinski stated, inartfully, "I abandoned the 'for cause' course [sic] of action as the Complaint was filed prior to the terminate [sic] of the 08/31/2019 [sic] in the notice."

A-2736-19

"abandoned the count for 'for cause' eviction" for two reasons: first, "the predicate notice was defective due to the acceptance of rent after the termination date in the notice to quit," and second, "the predicate notice had not been timely/properly served prior to filing of the Complaint; rendering the notice defective."  He asserted "the case was never adjudicated based upon the notice to quit."

The tenants admitted the case was not adjudicated.  They also stated they "lack[ed] knowledge of why [Gnoinski] decided to settle."  But they did not address Gnoinski's allegation that he abandoned the eviction claim that was based on his intention to occupy.

Georgas certified that he settled the eviction action mindful of "the August 31, 2017 notice, that the landlord wanted to live in the property starting October 31, 2017."  He also understood that "the law allows the owner of a property to live in his property."  He said that Jennings and he "did not want to risk having to move out in ten to twelve days" to let the landlord move in, "so we made a deal to pay the rent and move out at the end of January 2018."  Acknowledging that Gnoinski's cause of action for possession based on the intention to occupy was premature, Georgas certified, "We knew he could file a new case" for

7

possession on that ground; "so that is why we entered the settlement that we did."

The tenants quit the premises in January 2018 as the consent judgment required. But the parties contest whether Gnoinski personally occupied the premises for six months thereafter. Gnoinski certified that he lived there for six months while renovating the apartment. He supplied photographs of his work and a tax return stating he resided there. But Georgas certified that "for rent" signs appeared "[s]oon after" he left, and "in March or April, 2018 it was obvious that [a] younger couple moved in" and "remained [there] about a year."

In count one of their August 2019 complaint, Georgas and Jennings alleged they vacated the apartment "as a result of" Gnoinski's notice that they had to vacate because he intended to personally occupy the property, but then Gnoinski "arbitrarily failed" to do so. In count two, Georgas and Jennings alleged that Gnoinski's failure to move into the property violated the Consumer Fraud Act. That claim was based on the theory that the notice to occupy was fraudulent because Gnoinski never intended to occupy the property. Georgas and Jennings sought treble damages and attorney's fees. Their attorney later argued their damages consisted of a differential in rent they paid, moving expenses, and storage fees.

 A-2736-19

In his answer, Gnoinski denied that the tenants vacated the property as a result of Gnoinski's notice. Gnoinski alleged the notice was defective, and the tenants consented to the judgment of possession "notwithstanding the allegation in the [eviction] Complaint." To support Gnoinski's summary judgment motion, his counsel argued that the notice to occupy was void, first, because the eviction complaint was filed before the required sixty-day notice period elapsed, and second, because the tenants agreed in the consent judgment to vacate after enjoying occupancy for additional months with a rent discount.

The tenants' counsel responded that the consent judgment did not withdraw Gnoinski's notice of intent to occupy, and the tenants were motivated to settle on the consent judgment's terms because of Gnoinski's announced intent to occupy. Counsel conceded that Gnoinski prematurely filed the cause of action to evict on the basis of the intent-to-occupy notice and that Gnoinski would have had to file a new complaint to pursue that cause of action. He stated that Gnoinski probably could not secure possession on that ground until early December. However, the consent judgment allowed the tenants to remain through January by paying $2,000 of the $4,000 in rent due. Counsel could not say "with any certainty" if Gnoinski's personal occupancy came up during the settlement discussions.

 A-2736-19

In granting Gnoinski summary judgment, the trial court held that the tenants could not "bypass a settled case after the notice was sent where the settlement says nothing about retaining any rights against somebody you're settling with . . . for these types of actions."

On appeal, the tenants contend that they did not waive their right to sue under the Anti-Eviction Act or the Consumer Fraud Act when they entered their consent judgment.

## II.

Applying the same standard as the trial court in reviewing the grant of summary judgment, see Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 330 (2010), we must determine if there is a "genuine issue as to any material fact" and if Gnoinski "is entitled to a judgment . . . as a matter of law," R. 4:46-2(c). "Not every issue of fact is material.  In order to determine materiality, it is necessary first to set forth the contours of the legal issue presented."  Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012) (citation omitted).

The legal issue is whether Gnoinski was bound by his notice that he intended to occupy the tenants' apartment, such that his failure to occupy triggered a right to relief under the Anti-Eviction Act or the Consumer Fraud

Act. If the answer to that question is no, then the parties' dispute over whether Gnoinski actually occupied the apartment, even if genuine, is not material.

A.

We turn first to the tenants' claim under the Anti-Eviction Act. As we noted at the outset, the Anti-Eviction Act permits a court to evict a tenant if the owner of a building with up to three residential units "seeks to personally occupy [the] unit." N.J.S.A. 2A:18-61.1(l)(3). But the landlord must first provide written notice and a demand for possession "two months' . . . prior" to instituting the action. N.J.S.A. 2A:18-61.2(f). Also, before suing, the landlord must wait until the lease, if any, expires. Ibid. And "[w]here a tenant vacates the premises after being given" such notice, "and the owner thereafter arbitrarily fails to personally occupy the premises for a total of at least six months," the "owner shall be liable to the former tenant in a civil action for three times the damages plus the tenant's attorney fees and costs." N.J.S.A. 2A:18-61.6(a).

Plainly, the statute is phrased in chronological terms, that is, a cause of action arises if the tenant vacates "after" receiving the landlord's notice of intent to occupy and the landlord then arbitrarily fails to occupy. But the Legislature intended more than a chronological relationship between the notice and the tenants' action; the Legislature intended a causal link. See S. Cnty & Mun. Gov't

11

Comm. Statement to A. 3570 (OCR), 4 (Nov. 24, 1975) (stating that the statute "imposes a personal liability on owner . . . to pay damages to any tenant evicted for purposes of owner occupancy, if . . . [the] owner . . . arbitrarily fails to effectuate the occupancy for a total of 6 months" (emphasis added)).  The treble damage provision is designed to penalize landlords who use "as a pretext" the right to occupy premises to terminate tenancies.  Hale v. Farrakhan, 390 N.J. Super. 335, 342 (App. Div. 2007) (stating "the specific purpose of the wrongful eviction causes of action created by N.J.S.A. 2A:18-61.6 is to protect tenants against pretextual evictions").  Thus, a tenant who vacates an apartment for reasons other than a landlord's prior notice of intent to occupy has no claim for damages, even if the landlord arbitrarily fails to occupy the premises thereafter.  Put another way, to maintain a cause of action against a landlord for arbitrarily failing to fulfill an announced intent to occupy, a tenant must vacate the premises in accord with the landlord's notice or an order of eviction enforcing that notice.

Here, the tenants did not vacate the premises because of, or in compliance with, the August 31 notice or any of the previous notices.  The March and June notices demanded that the tenants leave by August 1, which they refused to do.

12

Likewise, the tenants did not leave on October 31, as Gnoinski's attorney demanded in his August 31 notice.

Furthermore, Gnoinski effectively withdrew his notice of intent to occupy by entering into the consent judgment. A consent judgment is "in the nature of a contract entered into with the solemn sanction of the court." Cmty. Realty Mgmt., Inc. ex rel Wrightstown Arms Apartments v. Harris, 155 N.J. 212, 226 (1998) (quoting Stonehurst at Freehold, Section One, Inc. v. Twp. Comm. of Freehold, 139 N.J. Super. 311, 313 (Law Div. 1976)). Its "adjudicative effect" is equal to a judgment "entered after trial or other judicial determination." Ibid. (quoting Stonehurst at Freehold, 139 N.J. Super. at 313).[6] And like any contract, its interpretation "is a legal matter ordinarily suitable for resolution on summary judgment." EQR-LPC Urb. Renewal N. Pier, LLC v. City of Jersey City, 452 N.J. Super. 309, 319 (App. Div. 2016), aff'd o.b., 231 N.J. 157 (2017).

The consent judgment here — which has the adjudicative effect of a judgment of possession after a summary dispossess trial — did not grant possession "for purposes of owner occupancy." S. Cnty & Mun. Gov't Comm.

---

[6] When an unrepresented tenant enters a consent judgment for possession, the court must "review it in open court" to assure the tenant has entered it knowingly and voluntarily. See R. 6:6-4(a); Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 6:6-4 (2021).

13                                                          A-2736-19

<u>Statement to A. 3570 (OCR)</u>, at 4. Had it done so, possession would have been granted to Gnoinski long before January 31. Rather, the parties to the consent judgment contractually agreed that Gnoinski would not occupy the unit after October 31; rather, the tenants would. Gnoinski previously sought occupancy by November 1, but he and the tenants agreed that Gnoinski would abandon that plan by permitting the tenants to remain in the apartment until January 31. Although Gnoinski could have avoided controversy by expressly withdrawing his August 31 notice, or by including in the consent judgment an explicit release of any wrongful eviction claim based on his non-occupancy, we are convinced the notice became a dead letter when the parties entered the consent judgment extending the tenants' occupancy.

Viewed through a different lens, by entering into the consent judgment, Gnoinski waived his right to secure possession based on his occupancy, and the tenants waived their right to damages if Gnoinski did not occupy. We recognize that "acceptance of payment after a notice to quit provides merely evidence of waiver which nevertheless remains a question of intent," <u>Jasontown Apartments v. Lynch</u>, 155 N.J. Super. 254, 263 (App. Div. 1978), but we discern no genuine issue of the parties' intent. According to the consent judgment, Gnoinski relinquished his right to occupy the apartment on November 1. Likewise, the

tenants relinquished their right to damages by securing the right to occupy the apartment instead of Gnoinski. In <u>Montgomery Gateway East I v. Herrera</u>, 261 N.J. Super. 235, 240 (App. Div. 1992), we held that "the granting of a new lease and acceptance of rent in that new term is so inconsistent with an intention to require a surrender of possession of the premises as to amount to an election to waive the right to terminate the tenancy because of the past rent defaults." Likewise, here, the parties' agreement to extend the tenants' term for three months beyond the notice's termination date and proposed personal occupancy amounted to a mutual waiver.

It is of no moment that the tenants were motivated to settle by the risk that Gnoinski could secure their eviction by filing a new eviction complaint sixty days after the August 31 notice ripened. Gnoinski did not do so. And, as tenants' counsel conceded, the August 31 notice had not yet triggered a right to evict when the parties entered the consent judgment. The Anti-Eviction Act creates a cause of action for wrongful eviction, not hypothetical eviction.

In sum, we affirm the trial court's order granting Gnoinski summary judgment on the tenants' claim under N.J.S.A. 2A:18-61.6(a).

B.

We turn next to the tenants' Consumer Fraud Act claim. Among other things, the Consumer Fraud Act declares unlawful "any . . . deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale" — which includes "any . . . rental," N.J.S.A. 56:8-1(e) — "of any . . . real estate." N.J.S.A. 56:8-2; see 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 465 (App. Div. 1988) (applying the Consumer Fraud Act to a residential landlord).[7] Proof of intent to deceive is not required in the case of an affirmative act. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17-18 (1994).

To assert a private cause of action, a plaintiff must show that the unlawful conduct caused harm, but "causation under the [Consumer Fraud Act] is not the equivalent of reliance." Lee v. Carter-Reed Co., 203 N.J. 496, 522 (2010). "To establish causation, a consumer merely needs to demonstrate that he or she

---

[7] We do not address the issue — because Gnoinski does not raise it — of whether his involvement in real estate was too insignificant to subject him to the Consumer Fraud Act. See Sheva Gardens, 227 N.J. Super. at 465 (stating "there may be some question" regarding the Consumer Fraud Act's applicability "to the isolated rental of an apartment in a two-family house"); Heyert v. Taddese, 431 N.J. Super. 388, 413 (App. Div. 2013) (applying the Consumer Fraud Act to an owner of "at least three two-family homes" with rental units); 539 Absecon Boulevard, L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 274-75 (App. Div. 2009) (reviewing authority that the Consumer Fraud Act does not "apply to the isolated sale by a homeowner of a single-family home" or "non-professional sellers of real estate").

A-2736-19

suffered an ascertainable loss 'as a result of' the unlawful practice." Ibid. (quoting N.J.S.A. 56:8-19). A plaintiff who suffers such an ascertainable loss is entitled to treble damages plus "reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19.

Here, the tenants contend that Gnoinski committed an unlawful act under the statute by falsely stating he intended to occupy the premises when he actually had no such intention. "A failure to fulfill a promise may constitute a breach of contract, but it is not fraud and the non-performance of that promise does not make it so." Barry v. N.J. State Highway Auth., 245 N.J. Super. 302, 310 (Ch. Div. 1990). But "[s]uch conduct is a misrepresentation . . . if the promisor knew when he [or she] made it that the promise could not or would not be fulfilled." Ibid.

But even if Gnoinski never intended to occupy the tenants' apartment when he told the tenants in March, June, and August to leave so he could move in, Gnoinski effectively withdrew his expression of intent by agreeing in the consent judgment to the tenants' continued occupancy. Gnoinski's statements of intent to occupy did not cause the tenants an ascertainable loss because they did not vacate the premises in response to Gnoinski's statement. Rather, they

17

remained past each of Gnoinski's deadlines, and they vacated the premises only after enjoying three months of additional occupancy, with a discounted rent.

Therefore, we affirm the trial court's order granting Gnoinski summary judgment on tenants' Consumer Fraud Act claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2736-19